Filed Sept. 28, 1893.

———————◆———————

No. 842.

## THE INDIANAPOLIS CABINET COMPANY v. HERRMAN.

CONTRACT.—*How Construed.*—Where the language of a contract is uncertain or ambiguous, it is proper for the court, in construing it and the rights of the parties thereunder, to consider the situation of the parties at the time of its execution, and their subsequent conduct under it, as giving a practical construction to it.

SAME.—*When not Void for Uncertainty.*—Where, under the rules of construction, it is clear that a contract calls for nine car loads of whitewood, in the proportions named therein, the contract will not be void for "uncertainty" for the reason that a car load may be various amounts, from 35,000 to 60,000 feet, the contract being binding, at least, for the number of cars of the smallest capacity.

PRACTICE.—*Excluding Witnesses from Court Room.*—*Separation of.*—*Abuse of Discretion.*—Where, on motion of defendant, witnesses are separated and excluded from the court room, except, on request of defendant's attorneys, a witness, an agent of defendant, who was familiar with all the transactions, and whose aid and counsel the attorneys for defendant desired, was permitted to remain. Such ruling of the court can not be said to be such an abuse of discretion as to warrant a reversal.

DEPOSITION.—*Questions and Answers Referring to Articles Present.*—*Reading on Trial in Absence of Such Articles.*—Where certain articles are present when a deposition is taken, and to which some of the questions and answers refer, it will not amount to available error to allow them to be read in evidence in the absence of such articles, when prejudicial error is not shown.

From the Marion Superior Court.

A. C. *Harris* and L. A. *Cox*, for appellant.

A. *Seidensticker*, J. S. *Duncan* and C. W. *Smith*, for appellee.

The Indianapolis Cabinet Company v. Herrman.

DAVIS, J.—This action was instituted by appellee, against appellant, to recover damages for the alleged breach of a contract, the terms of which will be hereinafter stated.

The issues joined were submitted to a jury for trial; but, after the evidence was heard, the jury, by agreement of the parties, was dismissed, and a special finding of the facts was made by the court, and on the conclusions of law thereon stated, judgment was rendered in favor of appellee, for $426.65.

Each party excepted to the conclusions of law, and appellee appealed to general term, where errors were properly assigned by each of the parties.

In general term, the judgment of the special term was reversed, with instructions to restate the conclusions of law and to render judgment for appellee in the sum of $1,836.01.

The principal question involved in this appeal is as to what is the proper construction of the agreement upon which suit is brought, which is as follows:

"DECEMBER 22, 1887.

"*The Indianapolis Cabinet Company, Indianapolis, Ind.:*

"GENTLEMEN—Please furnish me with whitewood in the following proportions, and as hereinafter specified, at $8.50 per M. feet, F. O. B., Indianapolis, Ind. Terms, sight draft after receipt and inspection of goods in New York. Deliveries to be made at the rate of 1½ car loads per month, for six consecutive months.

"All dry sizes.

|  |  |  |  |  |
|---|---|---|---|---|
| " | 8,000 pieces | 33 | x 15. |
| " | 10,000 " | 35 | x 16. |
| " | 2,000 " | 25 | x 15. |
| " | 500 " | 43½ | x 16. |
| " | 1,000 " | 25 | x 11. |
| " | 1,750 " | 24 | x 12. |

The Indianapolis Cabinet Company *v.* Herrman.

| | | | |
|---|---|---|---|
| " 2,000 | " | 29 ½ | x 13 ½. |
| " 2,000 | " | 25 | x 12. |
| " 5,000 | " | 39 | x 15. |
| " 1,000 | " | 74 | x 18. |
| " 4,000 | " | 33 | x 12. |
| " 1,000 | " | 25 | x 10. |
| " 1,750 | " | 24 | x 11. |
| " 2,000 | " | 23 ⅜ | x 11. |
| " 2,000 | " | 29 ½ | x 11. |

"All this stock must be stout, ¼ of an inch thick when dry, *like sample furnished you to-day*, of which I keep a duplicate in New York, being part of a shipment from you during last month.

"Quality of whitewood not to be inferior to former shipments, admitting, however, five per cent. of the amount ordered to contain split, not exceeding six inches in length—should more than this percentage be defective, I am to have the right of placing them at your disposal —five per cent. with sound knots, balance to be clear stock.

"Please state if you accept order under these conditions, and how soon I may expect first shipment.

"Signed:    Yours truly,

"H. HERRMAN.

"Accepted:

"INDIANAPOLIS CABINET Co."

The court also found that for many years prior to said date the appellee had been engaged in the business of manufacturing and dealing in all kinds of lumber used in making furniture, and that appellant had for many years been engaged in manufacturing stock or cut whitewood used in the manufacture of furniture; that appellee had been accustomed to buy and appellant to sell cut whitewood in car load lots; that, "in the lumber trade, the term car load as applied to whitewood does not mean

any specific number of feet or quantity, nor does it appear from the evidence how many hundred or thousand feet of whitewood are contained in an average car load, farther than may be inferred from the fact that the smallest cars will contain about 35,000 feet of whitewood and the largest cars about 60,000 feet of such whitewood"; that in November, 1887, appellant shipped to appellee a car load of whitewood, after which the letter above set out was written and the order accepted; that on December 28, 1887, appellee wrote appellant that, in reliance on such acceptance, he had entered into a large contract for furniture, and for them to hurry "first car load with all possible speed"; that on January 30, 1888, appellant wrote, "will forward the first car sometime next week, and will make shipments promptly thereafter"; that on February 2d appellee wrote again, "I rely on your promises to forward the first car some time next week and the following shipments promptly thereafter, and in consequence I will not order the stock elsewhere"; that on February 11th appellant did ship a car load of cut whitewood of 40,000 feet; that the same was duly inspected in New York, and 29 per cent. of the whitewood contained in said shipment did not fulfill the requirements of the contract in respect to quality; that appellee promptly notified appellant of the result of inspection, and that the rejected material had been placed at disposal of appellant, offering, however, to take the same at 50 per cent. of contract price, which was accepted, and appellee fully paid appellant for the entire car load; that in accepting said offer appellant stated, "this kind of a loss can not be allowed to occur in the cars which we ship you," and suggested that appellee should have his agent or some one here to inspect the goods and receive them; that on March 26th, appellant shipped another car load

containing 39,000 feet, a part of which was also defective and did not fulfill the requirements of the contract, of which due notice was given appellant, and payment in full was made on same terms as before; that, in addition to the two cars, about a half a car load of such lumber had, prior thereto, been delivered by appellant and shipped with other material through the branch office of appellee; that no part of the balance of the order was ever shipped; that in subsequent correspondence appellant asked for inspection at Indianapolis, and appellee insisted on inspection in New York, and suggested that appellant might secure some representative there to aid in the future inspection, and, farther, he duly notified appellant that if the contract was not complied with he would be required to purchase the material elsewhere, and would hold appellant liable for the difference in price; that appellee was compelled to, and did, pay $18 per thousand for the whitewood, in order to comply with his obligations, on account of the failure of appellant; that the freight from Indianapolis to New York was $1.45 per thousand; that the total amount furnished by appellant, under said contract, was 86,924 feet.

We have not endeavored to set out the special findings in full, but have called attention to the substance of so much thereof as may be necessary for the determination of the question presented.

The contention of appellant is, that the writing under the evidence fails to constitute a contract, but was void for uncertainty, and did not bind appellant to furnish any whitewood.

Counsel further insist that if it does constitute a binding contract, it is only to the extent of the number of feet of whitewood specifically set forth and described in the pieces of lumber embraced in the itemized statement contained therein.

If the theory last mentioned is correct, then it is conceded there was no error in the conclusions of Judge Howe in special term.

The contention of appellee is, that it was a contract binding appellant to furnish nine car loads, each containing not less than 35,000 feet of whitewood, in the proportion therein described, to be delivered at the rate of one and one-half car loads per month.

This appears to have been the theory adopted by the court in general term, as announced in an opinion by Judge Taylor.

When the language is uncertain or ambiguous, it is proper for the court, in construing the contract and the rights of the parties thereunder, to consider the situation of the parties, at the time of the execution of the paper, and their subsequent conduct under it, as giving a practical construction to it. ·

The application of the rules of construction lead to the conclusion that the paper constituted a contract for nine car loads of whitewood, in the proportion therein named, to be delivered at the rate of one and a half car loads per month.

In the answer of appellant, it is said a car load "means a car full," and it is found that "about one-half car load" was 18,893 feet; one "car load of cut whitewood," 40,075 feet, and "another car load," 39,113 feet. It is therefore apparent, from the situation, correspondence and conduct of the parties, in the light of all the facts found, that each of the parties knew different cars would hold from 35,000 to 60,000 feet of cut whitewood. Nothing is shown from which it can be inferred that either party could have been ignorant on this question.

It is true the word "about" is used in the finding. "About," in this sense, means "not far from." The fact that a car load means any amount between about

35,000 and about 60,000 feet creates an element of uncertainty in the amount, and yet, the uncertainty, under the circumstances of this case, is not of that kind that renders the contract void.

So far as the contract is uncertain, the courts can not enforce it; but within the limits that the contract is certain, the courts will enforce it. The question is—"taking all the provisions of the writing, with the circumstances interpreting it"—what is the result? *Raymond* v. *Rhodes*, 135 Mass. 337.

In the case of *Holland* v. *Rea*, 48 Mich. 218, the contract was to furnish "500,000 feet, more or less." The terms of the agreement introduced an element of uncertainty into the face of the contract. The uncertainty was greater than exists here, and yet it was held that "The intention was that they should be allowed to deviate somewhat from the 500,000 feet, and that the plaintiff in error should be bound to take whatever quantity should be furnished within the limits to which the deviation might properly extend, and it was certainly competent for the parties to bargain that way."

So, in this case, the parties had the right to contract for nine car loads without specifying the capacity of the cars. Notwithstanding the uncertainty, appellant was bound to deliver as much, at least, as nine cars of the smallest capacity. *Schreiber* v. *Butler*, 84 Ind. 576; *O'Ferrall* v. *Van Camp*, 124 Ind. 336.

On appellee's motion, the witnesses were separated and excluded from the room. At the request of his attorneys, an exception was made in favor of Mr. Schmidt, the agent of appellee in charge of his branch establishment in Indianapolis. The deposition of appellee was read in evidence, and it does not appear that he was present in person at the trial. The evidence is not in the record, and what Mr. Schmidt may have testified to is not shown.

The Indianapolis Cabinet Company *v.* Herrman.

He was allowed to remain in the court room, in pursuance of the statement that as he was the chief agent and head of appellee's business in Indianapolis, and was personally familiar with all the transactions had between the parties to the suit; the attorneys desired his aid, counsel and assistance during the trial.

This ruling was not, so far as the record discloses, such an abuse of the discretion of the trial court as to warrant a reversal. *Cottrell* v. *Cottrell*, 81 Ind. 87; *Detrick* v. *McGlone*, 46 Ind. 291; *City of Lafayette* v. *Ashby*, 34 N. E. Rep. 238; section 618, Elliott's App. Proced.

The only remaining question is whether the court erred in permitting answers propounded to witnesses by appellee, in depositions taken in New York, to be read on the trial in the absence of certain pieces of whitewood referred to in such answers. The pieces appear to have been a portion of the samples retained by appellee mentioned in the original order, and were present when depositions were taken, but were not produced at the trial.

The order indicates that the sample was in duplicate, one part of which was retained in New York and the other part of which was furnished appellant.

In the absence of the evidence, we are not advised as to whether such duplicate was ever in fact delivered to appellant. No complaint, however, is made on account of any such alleged failure.

There is no claim that the sample referred to in the depositions was not the sample taken from the previous shipment and retained by appellee, or that appellant did not have a duplicate thereof at the trial.

We have not been able to determine, from the record or argument, that the presence or absence of the sample at the trial would have tended to change the result. No part of the two and one-half car loads shipped under the

order was present, so far as appears, either at the taking of the depositions or the trial.

In any event, the record in this respect does not disclose any hurtful or prejudicial error against appellant.

The judgment, at general term, is affirmed.

Filed June 9, 1893; petition for a rehearing overruled Oct. 10, 1893.